**FILED**

JAN 3 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Betty Ann Newby,
425 12d St NW 2000 ı
     plaintiff,

Civil Action No._____

vs.

President George W. Bush,
 Vice-President Dick Cheney,
 Senator Ted ~~Stevens~~ Andrews
Attorney General Alberto Gonzales,
Justice Samuel Alito, Third Circuit Court of Appeals,
United States Senate Judiciary Committee,
Senator Arlen Specter,
Senator Orrin Hatch,
Senator Charles Grassley,
Senator Jon Kyl,
Senator Mike DeWine,
Senator Jeff Sessions,
Senator Lindsay Graham,
Senator John Cornyn,
Senator John Brownback,
Senator Tom Coburn,
Senator Patrick Leahey,
Senator Edward Kennedy,
Senator Joseph Biden,
SenatorHerbert Kohl,
Senator Dianne Feinstein,
Senator Russell Feingold,
Senator Charles Sumner,
Senator Richard Durbin,
Federal Election Commission,
Commissioner Robert D.Lenhard,
Commissioner Hans A. vonSpakovsky,
    Commissioner Steven T. Walther,
Chevron-Phillips Chemical Company,
Conoco-Phillips, Inc.,
Exxon-Mobile Corp., and
Justice Nathan Hecht,
George Whittenburg, III, Esq.
 State Bar of Texas
 Senator Bill Frist,
 City of Borger, Texas
 Larry Mullenix
 Minton, Burton, Foster& Collins, P.C.,
 Locke Lidell & Sapp, LLP,
 Jack Young,
 Michael Chertoff,
 Former President George H. Bush,
 Department of Homeland Security

CASE NUMBER 1:06CV00160

JUDGE: Royce C. Lamberth

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 01/30/2006

JURY ACTION

1.

To the Honorable  Judge of the Court:

Plaintiff Betty Ann Newby files her Complaint and asks the

Court for immediate equitable relief in the form of a

temporary restraining order to enjoin the U.S. Senate

from proceeding with any official action

regarding President George W. Bush's appointment of Justice

Samuel Alito, Third Circuit Court of Appeals, to the office

of Associate Justice of the United States Supreme Court

until the defendants are served, have answered, or made

appearances in this matter and until the Court has conducted

a hearing on plaintiff Newby's request.  She requests a

trial by jury on all issues triable to a jury.  Her

verification is attached and she files her verified Motion

for a Temporary Restraining Order simultaneously.

She requests appropriate declaratory and equitable relief

as shown in this Complaint and vacatur of all orders or votes

taken before equitable refief can be granted.


### I.  Parties

A. Plaintiff---Betty Ann Newby is a resident of the

District of Columbia.  She moved to the District in May

2005.  Her address is listed on the attached and incorporated

address list of the parties.  She is not represented by

a United States Senator or Representative, although she

occupied the status of a constituent-voter in the Lone Star

State.

2.

Plaintiff Newby was a sole practitioner in Borger,
Texas for twenty years whose law practice centered around
environmental, civil rights, and commercial issues.    She
has been the unwilling victim of both corporate and
governmental surveillance since 1981 and 1990 respectively.
She has been the victim of hate crimes perpetrated by
agents for the City of Borger, Texas; Hutchinson County,
Texas; Travis County, Texas; Phillips Petroleum Company;
Chevron-Phillips Chemical Company; Conoco Phillips, Inc.;
George Whittenburg, III; Locke Purnell Rain Harrell, P.C.;

state and federal judicial officers; and certain wealthy
and powerful defense firms as shown in more detail below.

Defendants---Defendant Bush is currently serving as
the chief executive officer for the United States government
although he was not elected by a majority of the voters
in   2000.  He appointed John Roberts to replace William
Rheinquist as the Chief Justice of the United States
Supreme Court following the Chief Justice's demise; however,
the President contended   that the Senate Judiciary Committee
was not entitled to obtain Roberts' legal papers produced
while he was an attorney for the executive branch under
the Reagan and Bush administrations .     The Judiciary
Committee did not compel testimony or production of
documents    from Justice Roberts and recommended him for
the high office without examining  all relevant
documents  or compelling him to answer relevant questions .

President Bush subsequently appointed Harriet Miers,
formerly a   shareholder with Locke Purnell Rain Harrell, P.C.,
in Dallas, Texas.   She served as the President's personal
lawyer and represented him in litigation in 1994 in Texas.
The media represented that she and Texas Supreme Court
Justice Nathan Hecht   are romantically involved.
Ms.Miers withdrew her name from consideration to replace
Associate Justice O 'Connor,claiming that ethical
considerations prevented her from accepting the nomination:
specifically,the attorney-client privilege and confidentiality
issues. Immediately President Bush nominated Samuel Alito,
a Justice sitting on the Third Court of Appeals,to replace
Justice O Connor.

The Senators listed as defendants are members of the
SenateJudiciary Committee.  Vice-President Dick Cheney is
the president of the Senateand is required to certify all
Senate resolutions or requests for the     Attorney General
to prosecute Congressional witnesses for contempt of
Congress in federal District Court.

The three Commissioner-defendants are new members of the
Federal Elections Commission and deal with the Electoral
College and with campaign contribution reports and  issues.
"Chevron, Conoco, Phillips, Exxon, and Mobil" have damaged
the plaintiff in this case.

4.

Senator Bill Frist has moved the senate for cloture to end debate on the appointment of Samuel Alito for Associate Justice of the United States Supreme Court. Senator Ted Stevens is the president of the United States Senate. Justice Nathan Hecht is a Justice on the Texas Supreme Court. George Whittenburg, III. is a lawyer in Amarillo, Texas. Larry Mullenix resides in Borger, Texas. Minton, Burton, Foster & Collins, P.C. is a law firm in Austin, Texas. Locke Lidell & Sapp, LLP is a Dallas-based law firm. Jack Young resides in Muleshoe, Texas. Michael Chertoff is Secretary of Homeland Security. Former President George H. Bush resides in HOuston, Texas. Donald Rumsfield is the current Secretary of Defense. Phil Gramm resides in Texas. Paul Wolfowitz has his place of business in the District. The Texas state Guard is headquartered in Austin, Texas.

4a

## II.  Jurisdiction and Venue

This Court has jurisdiction to decide the issues in this case because they present federal questions.  Plaintiff and most of the defendants work or reside in the District.

## III.  Discovery Plan

Plaintiff asks the Court to prepare a scheduling order detailed for the specific needs of this case.

## IV.  Jury Demand

Plaintiff demands a jury trial on all issues triable to a jury.

## V.  Facts:

In the early 1900's, various Oklahoma oil companies attempted to gain a toe-hold in the vast     oil and gas fields in the Panhandle of Texas.  Skelly Oil Company, Phillips Oil Company, and Kerr-McGee were all fast starters  of gasoline plants in remote locations accompanied by company camps and company towns near their facilities to provide a ready labor pool.  By the mid-1920's Phillips Petroleum Company was building company housing and developing its company town in Whittenburg, Texas---named for the wealthy ranching family upon whose land Phillips' gasoline plant and facilities reposed. along with the wealthy Johnson family.   Corporate Phillips did not own the land; it leased it from the ranchers.  For

over 60 years, corporate Phillips nurtured and sponsored a
residential company town, later      renamed Phillips, Texas.
Unlike the company-town belonging to Old Dominion sugar interests
and comprised of trailer homes, residential Phillips with its
exemplary schools, non-existent crime rate, loyal and
patriotic family-oriented employee-families, and corporate
Camp Department  was a crown jewel for public relations for
corporate Phillips.

In the 1930's, a Phillips chemist   provided the young
company with its financial key for the future:  the polymer-
ization process.  This process allows refineries to produce
lucrative byproducts      by refining technique and eventually
led Phillips and other similarly situated"majors" to the
Middle-East and the Arab oil, relatively cheap due to its
high sulphur content and the lack of sophistication   and
market    skills of the third world.         Eventually,
all major global petrochemical concerns were jockeying for
favor and lucrative contracts with Middle-East sellers.

After World War II         and the Japanese attacked
Pearl Harbor, Phillips and B.F. Goodrich ran the synthetic
rubber plants near Borger, Texas for the federal government,
where Phillips and J.M. Huber's carbon black and other
chemicals were available in abundance through corporate
Phillips' subsidiaries.  Corporate Phillips provided
high octane aviation fuel for the U.S. Air Force and gasoline
products for the war effort.  Phillips loaned one of its

chemists to the federal government for the Manhattan Project,
cementing its favored position with the federal government.
Corporate Phillips proudly  bragged to its employees in
public relations articles that the company's founder
Frank Phillips routinely entertained American Presidents
at his Oklahoma ranch.  Dwight Eisenhower is pictured
appearing in a company-sponsored parade in Bartlesville,
Oklahoma after he left office as the guest of CEO Boots
Adams.  A Phillips manager,      Bill Keeler, was indicted
in the early 1970's for bribing government officials.
Corporate lawyers bragged to the undersigned during
litigation that it hired former FBI agents whenever possible
because it was good for business and they were well worth
their high salaries.  The undersigned attended
a well publicized Environmental Protection Seminar for
attorneys at a Houston hotel  in the late 1980's  to learn
more about the application of federal and state laws to the
facts presented by corporate Phillips' forcefully evicting
its company town on terms disastrous to its residents but
highly favorable to corporate Phillips because its hazardous
chemicals from its pesticides, paints, solvents, pharmaceuticals,

and plastics posed serious public health risks to residential
Phillips.  A Phillips Vice-President with a degree in chemistry
and a lobbyist in Washington, D.C. was the key-speaker, touting
only industry's side of the environmental picture.

In the  late 1980's plaintiff enrolled in a graduate
chemical engineering course to learn more about the chemical

7.

process and    regulatory permitting process.  She learned
quickly that corporate Phillips provides the models for
state and federal regulatory agencies, who, later, usually
grant the permits based upon the corporate models.
The company routinely does not practice abatement procedures
because of the expense.  If the plaintiff's bar attempts
litigation, Phillips bribes the judges deciding the
pollution-related issues.

Although corporate Phillips quickly became a giant
in the lucrative petro-chemical field, its  management
neglected to retain an environmental toxicologist until
the 1970's.  Its facilities spewed dangerous and toxic
chemicals into the air, buried hazardous wastes illegally,
and contaminated creeks , underground water, and rivers.
As a result, the danger to humans and animals was traded
for huge profits.  Although corporate management knew the
health risks its facilities posed for residential Phillips,
its accountants and lawyers figured that the company saved
a million dollars a year in ad valorem taxes that nearby
Borger, Texas would have charged if it had provided the
same type and quality of services that corporate Phillips
provided for its residents.

Notwithstanding the convenience of a company town,
corporate Phillips was itself    playing with the risk of

being exposed for its wanton and intentional conduct in
bribing judges, illegal pollution, and bribing elected
officials.  Although the Clean Air Act ushered in the

8.

regulatory age, it grandfathered into the regulatory age
existing refineries and facilities.  Therefore, only new
construction that  is not tied to the old facilities  by
physical contact requires permitting.  Medical monitoring
is required for new construction for new units at the
Borger facilities because the  chemicals and substances
are so hazardous.  That particular facility is the largest
inland facility in theworld.

In the late 1980's Phillips obtained a patent for its
process to extract   sulphur from heavy crude like that
from Arab oil by installing a hydrogen unit nearby to produce
 99% pure hydrogen sulfide to use as feedstock for its
lucrative by-products.  The ResidualAtmospheric Residual
Desulphurization System (ARDS) was so successful that it
is used by the majors.  The problem for local residents
is continuous leaks of deadly $H_2S$ from the process.  The
combination of deadly chemical releases into the air near
Borger and Phillips, Texas     has played havoc with public
health.  While Phillips paid the residents only $5,000,000
to relocate residential Phillips, the forced eviction
cost the 1,000 residential homeowners approximately
$100,000,000.  Pursuant to the CERCLA (42 USC 9701, et seq.)
the residents are entitled to what the move actually cost
them, plus interest and attorney's fees---not what monies
Phillips decided to pay the        loyal employees and
retirees. The 1986    CERCLA amendments federalized the
state law discovery rule in hazardous chemical cases.

In this milieu  ofcompany town, Big Oil, and huge
campaign contributions by corporate Phillips'constantly
perpetuating an almost perfectly preserved feudal estate
in Texas and the Fifth Circuit,    a game warden reported
dead fish in a tributary to the Canadian River that were
easily traced to Phillips' operations in Phillips, Texas.
Corporate Phillips blamed human sludge from its company
town and school .  It quickly "modernized"its waste
water treatment plant at the creek site and later claimed
in public that NPDES studies showed that its sewage treatment
was adequate.  in order to comply with state water laws.
However, a week later, the Whittenburgs and Phillips used
inadequate sewage treatment as the reason why residential
Phillips had to relocate on its terms.  The homeowners
filed a class actionaction suit in federalcourt and
organized a homeowners association with the goal of
incorporating the town, taxing corporate Phillips on its
three billion dollar facilities, and       buying the land
from the Whittenburgs.  George Whittenburg, III., Esq.
invited the homeowners to   his office and promised them
that his family wouldsell them the land rather than Phillips.
The deal betwee Phillips and the Whittenburgs to evict the
homeowners was the product of several years of negotiating.
Whittenburg used the unsuspecting homeowners to try to obtain
a higher price for their land.  Corporate Phillips could
not obtain regulatory permits without evicting the town;

10.

Phillips made George Whittenburg, III. a counter-offer which the Whittenburg heirs accepted. Phillips paid them 12 million dollars for their land conditioned that if Plaintiff obtained judgments in the class action litigation, the Whittenburg heirs were required to repay the 12 million dollars, This, of course, had the obvious effect of placing a bounty over plaintiff's head .

Whittenburgs and Phillips joined forces in defending against the homeowners' class actions.  They also initiated a lucrative referral business with the presiding federal judge's husband's two-man law firm without disclosures to plaintiff or her clients.  They intentionally spoliated truckloads of protected environmental documents, suborned perjury, and misrepresented the law.  They and their agents surveilled plaintiff and her clients and family and defamed her in the community.  They persuaded Dick Cheney as Secretary of defense and George H. Bush to have plaintiff classified as a terrorists without a warrant .  By 2003 her classification was K-Dog-3:  a military surveillance classification only one lower than the surveillance used to hunt Bin Ladin.

In 1989, when plaintiff refused to settle or dismiss the CERCLA class action, with  certain CERCLA response costs and common law and civil rights damages, Phillips' agents  persuaded  a state court district judge to offer plaintiff a job in Phillips' legal department if she would stop litigating the environmental issues.  The state judge

begged plaintiff to consider seriously Phillips' offer.
He threatened her that it and its lawyers, Locke Purnell
Rain Harrell, P.C., and George Whittenburg's firm controlled
the courts.He  said that Big Oil would ruin her and her
family. Phillips agents had told him they controlled J. Scalia.

In 1992, plaintiff learned from a Mississippi appellate
lawyer at the Fifth Circuit that Phillips' lawyers and
Phil Gramm were actually selecting panels at the Fifth
Circuit favorable to Republican campaign contributors.
Two years later, when Justices Higgenbotham, Barksdale,
and Jones again tried to protect PHillips' interests in
violation of federal law, plaintiff notified Chief Justice
Henry Politz of the Fifth Circuit.    Another   neutral
panel heard the appeal and reversed and remanded thecase
to the district court.  Immediately, Phillips
and Whittenburg interests  persuaded  officials at HUD to
accelerate plaintiff's note and wrongfully foreclose on
a deed of trust.  The property was plaintiff's law office.

Each time plaintiff had or has a critical court date,
Phillips and Whittenburg agents have the managers for the
City of Borger, Texas    challenge her on properties she
owned and to require  expensive and immediate repairs.
In 1996, a Phillips agent            threatened plaintiff
that Phillips  would eventually have Borger bulldoze all
of her properties and that Nathan Hecht and PHillips' Dallas
lawyers would have her disbarred because they could easily
control the courts and the State Bar.

In 2000, plaintiff's brother died from cancer.
Subsequently, agents for the City of Borger began to
condemn and bulldoze her properties, including her home
and her late brother's.  They towed and flattened her car.
They participated in intense surveillance and defamation
of plaintiff and denied her impartial judicial officers
with    influence peddling and bribes.

Plaintiff moved to the District in May 2005.  She filed
suit against the responsible defendants for the events above
referenced.  The clerk of the court claimed not to receive
the complaint.  Plaintiff challenged Justice John Roberts'
nomination on Due Process grounds.  Judge Huvelle dismissed
her case with prejudice a few hours after she filed it.
Plaintiff typed a thirty page Application for a Writ of
Mandamus to file in the Court of Appeals for the District
of Columbia .  Agents for the Bush administration, upon
information and belief,  persuaded  managers at the federally
funded homeless shelter where plaintiff now resides to steal
her metal cart, briefs, law books, and typewriter and
destroy them in the trash compactor.  This, of course, had
the effect of keeping the Senate from voting on Roberts'
nomination a second time in response to a potential    motion
to reconsider laid on the table.

Plaintiff timely perfected her appeal and the brief
is not due until February 1, 2006.

Throughout the bulldozing of plaintiff's properties
and the grievance process with the state Bar of Texas, opposing

13.

counsel contended that the harsh treatment was out of
their hands because the White House was backing this action.
Plaintiff did not know until Harriet Miers' nomination that
Miers' former Dallas firm was tied to both Phillips and
   George W. Bush                   while she was aggressively
litigating the class action and its related issues of
intentional spoliation, judicial bribery, suborning of
perjury, and obstruction of justice   against corporate
   Phillips and the Whittenburg heirs in federal class actions.

### The Alito Nomination

     Plaintiff delivered a letter to Chairman Arlen     Specter
during the Alito hearing   asking him to request candidate
Alito to answer questions regarding his role, if any, in
the warrantless surveillance of her by the federal government
and to produce all relevant scholarship.  Upon information
and belief, Samuel Alito and John Roberts both participated
in scholarship supporting clandestine and warrantless
surveillance of  Americans like plaintiff who are not terrorists
and who are political foes of the Republicans.

     Plaintiff asked, alternatively, to be allowed to make
the request for production and to pose questions to the
candidate.  She asked alternatively, that the hearing be
recessed until the Senate could pass a bill giving the voters
of the District              representatives in Congress
so that she would have a Senator to present her questions;

14.

Senator Specter did not recess the hearing, did not ask Samuel Alito any questions relating to his role in domestic surveillance without warrants, nor did he allow plaintiff to make requests for production or engage in questioning Samuel Alito as an unrepresented American. No Senator introduced a bill to allow D.C. voters to elect  Senators to         participate in confirmation hearings.  A true copy of the letter is attached as Exhibit A.

The media has widely reported   vast,  warrantless surveillance domestically since the Roberts' confirmation hearing.  The public is entitled to know        whether or not candidates for the highest court have engaged in such illegal activities to judge their characters and  morals as well as their legal philosophies.  There is currently no Senate rule that allows minority  members of the Senate Judiciary Committee to seek civil contempt in federal district court by the U.S. Attorney General. There is currently no provision to allow District voters  an opportunity to pose    questions and request production of documents from candidates for the courts. There are no rules requiring checks and   .balances or the propriety of the murder boards in which the Justice Department, spending     taxpayers' monies, woodshed candidates and tell them how to avoid answering difficult questions. There are no laws that declare that any gift to any political official is a bribe and is illegal.  A democratic America has become a corporate oligarchy and Due Process and other  grand promises of the Constitution are eviscerated by

special interests and lobbyists who give properties to
government officials, but who should be allowed
         to support governmental officials only by    votes.


     Big Oil as a special interest group is responsible
for this administration's invasion of Iraq in a thinly
veiled effort to secure a military presence of the
United  tates in the Middle East      to protect its
supply of inexpensive  crude oil   and    to protect the
pipeline near the Caspian Sea that carries products to Europe
and Asia.  By breaching the United Nations Charter and taking
world peace keeping responsibilities away from the United
Nations, President Bush breached the Charter of which
Betty Ann Newby is a third party beneficiary.  The United
States, of course, is a signatory to the United Nations
Charter.


     The Central Intelligence agency at the insistence of
former President George H.Bush used operatives and
contractors  and sub-contractors to install surveillance
devices in Sadam Hussein's home and offices and those of
his family and associates.  Upon information and belief,
over 10,000 such devices were installed clandestinely between
1991-1995.  Upon information and belief, the executive branch
learned from this massive illegal surveillance operation what
weapons Iraq had and did not have, what Sadam Hussein wished
he had but did not have, and the locations of all weapons.

16.

VI.   <u>Causes of Action</u>   A.     <u>Equitable Relief</u>

Plaintiff requests equitable relief from the continuation of the Samuel Alito confirmation until the federal courts decide the issues presented in plaintiff's cases against Judge Roberst and Judge Alito. Plaintiff will suffer irreparable harm if the confirmation proceeds without being able to question Samuel Alito about his involvment in domestic, warrantless surveillance of her and thousands of other Americans.

Plaintiff has no adequate remedy at law. Justice is served by this court's granting such relief. Plaintiff will likely prevail in her Constitutional challenges at trial. She is willing to post a bond to secure the equitable relief. She is denied a republican form of government andthe same privileges and immunities as persons in the continental United states by not having Congressional Representatives. She is denied her First and Fifth Amendment and Fourteenth Amendment rights as well. She is denied her right of privacy and Fourth          Amendment rights if the government surveillance is not punished and exposed. Her life, liberty,     happiness, and properties are at stake with the appointment of federal appellate judges and are directly tied to the issues raised in this case. Judicial relief will likely resolve the interests she claims. There is  inadequate time to serve the defendants and conduct

17.

a hearing before the Senate votes on Samuel Alito's
appointment.  In the interest of justice, plaintiff asks
the court to enter equitable orders halting the confirmation
process and to vacate any vote  or confirmation orders
that may be entered before equitable orders are granted.

B.      Denial of a Republican Form of
                  Government

     Article Iv of the Constitution promises that the federal
government will provide a republican form of government
to all states.  A republican form of government includes
self-determination by persons living in the state and
includes representative government.

     The District is the functional equivalent of a state
and is not to be treated as a territory.  Alternatively,
the  federal government has become the functional
equivalent of a state by providing a myriad of state-like
activities to D.C. residents.  It is estopped to deny
representatives in Congress based upon the population of
the District just like any other state.  Principles of
equitable estoppel apply to the conduct of the federal
government and its refusing to allow D.C. voters
democratice government while waging war iin the Middle
East, ostensibly, to foster democracy globally.

     As shown by the   specific facts set forth in this
case, plaintiff has no Senator to request production of
documents and to ask questions of Samuel Alito solely because

18.

she is a D.C. resident and not a resident of one of the 50 states.

A majority of D.C. residents are persons ofcolor. To refuse to allow them Congressional representatives

145 years after the Civil War violates the Fourteenth , Fifteenth, and Fifth Amendments.

Not allowing plaintiff to have Congressional representatives as a D.C. resident and to participate in a meaningful way in confirmation hearings violates her First Amendment rights and her right to travel interstate and to enjoy the same Article Iv        Privileges and Immunities  and a republican form of fovernment.

." The U.S. is the only democratic nation in the world that denies representation in the national legislature to its citizens of its capitol city;  Washington, D.C. residents have no representation in the U.S. Senate and have only one non-voting delegate in the U.S. House of Representatives.

Per capita, more D.C. residents have fought in wars defending American democracy than residents of any state. D.C. residents pay over 3 billion dollars in annual taxes to the federal treasury---more, per capita, than the residents of all but one state.

D.C. is the only U.S. jurisdiction not permitted to spend its own local tax dollars without approval by Congress. The District is larger than Wyoming and is close to that of seven other states.

19.

"According to polls, the overwhelming majority of Americans support full supportrepresentation   for D.C. residents."   (D.C. Vote www.dcvote.org)

D.C. residents are denied their civil rights as Americans in not being able to participate in democratic Congressional representation.

C.     No adequate remedy for minority Committee persons to challenge a  Congressional witness.

The Senate rules, in particular 5 U.S.C. ¶¶ 192 and 194 are unConstitutional in failing to include a procedure to allow minority committee member to challenge a non-responsive or hostile Congressional witness who refuses to produce requested documents,   who avoids answering relevant questions, who    gives false answers, or who refuses to answer relevant questions.  The failure to include any minority challenge in the district court denies minority Senators Due Process and investigative powers promised to Congress in the Constitution.

D.    No remedy for unrepresented D.C. voters to challenge a candidate for appointive office.

The current Senate rules are not applied to cover un     -

represented D.C. voters who have valid, relevant questions and document requests for prospective candidates for high public office.   This lack of remedy has denied plaintiff

20.

Due Process, Free Speech and Assembly rights, republican form of government, and privileges and immunities provided to residents of the 50 states

E.     The use of the Murder Board Practice violates the Constitutional guarantee that Congress will      advise and consent regarding presidential nominations.

As shown by the reports in the media, the executive branch goes to great lenghts to insulate   judicial candidates and instruct them which questions to answer, which to avoid, and which to deny to play to the majority votes in the Senate.  Such practice is alarmingly akin to subordination of perjury and violates the spirit of Congressional inquiries that are designed to determine a judicial candidate's character,    judicial philosophy, and wheter of not the candidate's philosophy comports with mainstream American legal thought.  The role assigned to key players ion the mmurder boards is intended to garner rewards from the Republican Party and its leaders.  For example, Harriet Miers is credited with part of John Robert's success.  The Justice Department lawyer assigned to sit immediately behind Samuel Alito during his hearing is likewise,  guaranteed rewards from Republican bosses. (pursuant to media reports)

Because the murder boards' purpose is to secure judicial nominations for the White House, there is no law or rule of procedure with attendant checks and balances to curb abuse. Because such murder boards are not referenced in

21.

Constitution or U.S. Code or case law, they should not
be afforded unchallenged acceptance by Americans in general
and by minority Senators in particular.

      F.      Constitutional provision for appointment of
federal judges and marshalls is not democratic
because of multiple abuses that have ensued,
requiring that all judges, state and federal,
magistrates, and marshalls be elected by a
majority of the voters .

Although the original Constitution specifies that
federal judges, magistrates, and marshalls be appointed
by the President with the advice and consent of the
Senate, abuses have become such a part of the nomination
process that they undermine democratic principles.

Bribing political officials has become so common in
America that special interests have turned a proud
democracy into a corporate oligarchy. As shown by the
facts stated above,    Big Oil and other interests can
easily fix cases to  their advantage by affecting the
objectivity of judicial officers through bribes and influence
peddling. Most federal appointments to the judiciary result
in lifetime postition with removal by impeachment difficult
and rare. There is almost no check and balance on dishonest
judicial officers.

Because the Courts are the real levers of power in
a textbook western democracy, the control of the federal
courts  must be returned to the voters at duly scheduled
elections. Terms must be set for each office and no
gifts should be allowed lest they affect the
objectivity of the judicial officer.

Due Process under the Fifth and Fourteenth Amendment, First Amendment Rights, and Equal Protection, Privileges and Immunities, and  republican form of government are violated by the current adherence to appointment of federal  judicial officers and marshalls by the president with "the advise and consent of the Senate."

     G.   The Electoral College is archaic and should

          be declared unConstitutional.


Although the Founders believed that all states should be given electors to cast their votes for the executive branch       positions of President and Vice-President rather than allow a majority vote, that practice no longer comports with democratic principles, equal rights, and due process.  For example, when the Electoral College was adopted, women and slaves were not allowed to vote.  Now, of course, that haschanged.  Therefore, the Electoral College has outlived its usefulness Constitutionally and is not consonant with more modern interpretations of true democratic principles.

     H.     The practice of allowing

          property to be given to political

          officers of any branch is bribery and is

          illegal.  The McCain-Feingold Amendments

          or any other campaign finance laws are

          unConstitutional.

Gifts to political officeholders in any branch is a
form of commercial bribery and are illegal.  In a
democratic society, the giving of property is a bribe
while the  act of vointg for the candidate is not a bribe.
Therefore, the current campaign contribution law is
unConstitutional on Due Process and Equal Protection
grounds as well Article IV grounds.

The facts specific to this case underscore the
long term consequences of bribing political officials in
all three branches.

I. Surveillance  activities carried on by the Executive
              without following Congressional guidelines
              as intprpreted by the Courts are unConstitutional
              and void. Whether the warrantless and political
surveillance is part of the     infamous Homeguard Security
or the Joint Terrorism Task Forces (  JTTFs) it is illegal.

Although the President contends he has authority to
engage in clandestine surveillance of Americans due to
national security interests, this is Constitutionally flawed.
Secondly, the record shows that the government engaged in
warrantless surveillance of the plaintiff beginning in 1990
or earlier as a political favor to Phillips Petroleum
Company, Locke Purnell Rain Harrell, P.C.;    George
Whittenburg, III, ESq.; and the City of Borger,
Texas.  The illegal surveillance violates her
civil rights and is illegal and compensable.
The principal surveillors used illegally obtained information

24.

to ruin plaintiff professionally and to destroy her property
without Due Process.

J.    Big Oil and other wealthy, special
      interest groups utilize confidential
      information to select panels of biased
      appellate justices in the Fifth Circuit
      Court of Appeals to decide large commercial
      cases favorably to wealthy contributors.
      This denies plaintiff an impartial court
      and the right to petition for redress of
      wrongs and equal treatment under the laws.

As shown by the facts in this case, state, local, and
federal government officials cooperated in clandestine,
warrantless surveillance of the plaintiff for over 15 years.
They obtained legally-related information that their agents
utilized in having certain justices present at the Fifth
Circuit to open the mail when they knew that certain of
plaintiff's pleadings would arrive in New Orleans.  These
justices then assigned the cases to themselves and to
their political friends, eviscerating any chance of an
impartial appellate court.   Justice Edith Jones threatened
the deputy clerks with dismissal if they failed to follow
her illegal instructions.  For example, a deputy clerk revealed
to plaintiff's brother in 1994 that"Judge Jones" would fire
her if she allowed him to deliver in person Appellants'
Brief pursuant to a certain deadline.  She showed him the

25.

file upon which was written the assignment to a panel

friendly to Phillips Petroleum Company:  Edith Jones, Patrick

Higgenbotham, and Rhesa Barksdale.  The deputy clerk told

George Newby that Justice Jones had written the notation

that no more pleadings were to be filed by the clerks.

These judges decide their own motion to recuse or

disqualify    does   The Honorable Mary Lou Robinson.

In 1996, plaintiff filed an Application for a Writ of Mandamus

to make the federal trial judge, Judge Mary  Lou Robinson,

recuse and disqualify herself after admitting in a court

order that her late husband had received referrals from

George Whittenburg, III, Esq., Phillips' agent, without

disclosures to the undersigned .  The Application was

accompanied by a motion to recuse for bias Justices Barksdale,

Jones, and Higgenbotham.  Justice Higgenbotham

denied the motion and purported to deny the Application

for a Writ of Mandamus and request for a jury trial and

vacatur of all previous orders entered by the trialcourt

even before the District Clerk in Amarillo had even sent

the court file.  The District Clerk never sent the record

to the Fifth Circuit.  Justice Higgenbotham purported to

be the Cheif Justice of the Fifth Circuit and entered a

bogus order signed by only two justices, claiming that no

other justices could be found on the Fifth Circuit.  The

CERCLA response costs and the common law damages in the

26.

Phillips cases exceed a billion dollars and should result in a number of Texas and Fifth Circuit judicial officers' being impeached and later indicted, as well as the President and the Vice-President.

The current federal rules and USC sections dealing with recusal, disqualification, and grievances are not enforced because of the improper influence peddling by wealthy entities like Big Oil and their agents. The current laws are ineffective because of the harsh, but real, consequences if an attorney complains about a judge's partiality or conflict of interest. The common practice of judicial"tampering"  is especially common in Texas and the Fifth Circuit which are the venues for a majorityof the hazardous chemical cases resulting from the refineries in that area.

K.

Because Chevron-Phillips, Conoco-Phillips, Exxon-Mobil's agents have participated in obstruction of justice,     have participated in political bribery and influence      peddling, and have caused the United States to protect their interests in Middle-East oil at all costs, they should have their state corporate rights to do business forfeited and their properties awarded to the states whose laws they violated.  The federal government, pursuant to current eminent domain law,should then effect a lawful taking of their properties for    the public good and literally nationalize the energy sector and   their related by-products

Corporations, as entities, are allowed to do business in the various states pursuant to charters granted to conduct lawful business pursuant

to their required articles of incorporation and corporate
filings.  They may do business legally no other way.
The corporate charter is a privilege granted by the sovereign.
The sovereign can withhold or terminate charters for illegal
conduct practiced by corporations.  Because the evidence is
overwhelming that these companies have violated their
charters in their dealing with the plaintiff over a long
period of time, the fact finder should enter findings
against them.  An impartial, unconflicted judge should enter
a judgment for damages;and the Secretaries of State should
revoke their rights to do business in the various states.

Creating a constructive trust to be held and
administered in the public interest to punish  the wrongdoers
is appropriate under state law; further, the federal
government now has the power of eminent domain to take
properties in the public interest and nationalize these
companies' properties for the benefit of the public.  This
federal district sitting in diversity, is required to apply
Erie v. Tompkins to the state law issues.

> L.   Samue 1 Samuel Alito has an ethical conflict of
>       interest that requires him to withdraw his
>       name as an Associate Justice of the United
>       States Supreme Court.
>           Alternatively, Samuel Alito is required
>       to provide all information to authorities
>       if he has knowledge of a fraud or crime
>       perpetrated by the Republican Executive branch.

28.

Upon information and belief, Samuel Alito prepared legal scholarship to the Executive branch regarding the legality of clandestine, domestic surveillance while he worked as a government lawyer in the 1980's. If Judge Alito cannot for reasons of confidentiality reveal any information regarding domestic, warrantless surveillance, he has no other ethical choice but to ask that his name be withdrawn as         a candidate for the position of Associate Justice of the U.S. Supreme Court.

Because the attorney-client confidence extends beyond the relationship,    and the attorney cannot breach that confidence without permission from the client, Alito cannot reveal any confidences of the government           without the Executive's consent. However, if Alito wishes to blow the whistle on those  who       delighted in warrantless surveillance    activities upon unsuspecting and trusting Americans, he is protected by the exception to the rule: The attorney-client privilege does not extend to crimes and fraud and   Samuel Alito must tell all he knows about the warrantless surveillance operations that were and still are being conducted by the government, by the military, and often by local law enforcement personnel, community leaders, or political adversaries.

If Justice Alito and Justice    Roberts engaged in illegal surveillance in violation of state and federal laws, that is highly relevant to their qualifications as federal

judicial officers making important public policy decisions for millions of Americans. If they did not so participate, perhaps their testimonies will shed light on the Congressional investigations and civil and criminal suits the surveillance will produce. What goes on in the night comes out in the light and their testimonies may have a salutory effect on the healing of America from this abusive practice.

M.    Breach of Contract

The George W. Bush Administration has breached its

the terms of the United Nations Charter to which the

United States is a signatory and to which Charter plaintiff

is  a third party beneficiary.  Because the Bush

administration refused to allow the weapons inspectors for

the United Nations to complete their inspections in Iraq

in attempting to assure world peace, before invading Iraq

and because CIA information from 1990- forward in all

likelihood revealed that Iraq posedono threat to the

security of the United States from such alleged weapons

of mass destruction, President Bush and his administration

falsely represented the facts totthe American people and

to Congress regarding the alleged imminent threat posed by

Iraq, causing millions of dollars to be spent  in the

on the war effort, thousands of persons to die and be

injured, destruction of    property, and tarnishment of

America's reputation, the officials and Big Oil should

pay the costs of the war in Iraq and not the American People.


Prayer

Wherefore, Premises considered, Plaintiff Betty Ann

Newby prays for equitable relief staying the Samuel Alito

confirmation pending the resolution of her suit by the

courts because she has raisedxvalid Constitutional challenges.

She prays for permanent injunctive relief from illegal

surveillance and declaratory relief.  She asks for

31.

Judicial declarations as follows:

1. the unConstitutionality of not allowing the residents of the District of Columbia, who are now allowed to vote only for the President and Vice-President, to have a Congressional delegation

2. the unConstitutionality of 2 U.S.C.§ 192 in failing to allow minority Senators and unrepresented Americans from seeking Congressional Contempt for witnesses who refuse to provide relevant ttestimony and produce documents in confirmation hearings

3. the unConstitutionality of current senate rules regarding confirmation hearings that do not provide adequate procedures for unrepresented D.C. voters request production of documents and testimony from judicial candidates

4. the unConstitutionality of the executive branch's use of murder boards to keep the public and minority senators from conducting meaningful investigative hearings in a meaningful time and manner

5. the unConstitutionality of allowing all federal judges and marshalls to be appointed rather than elected

6. the unConstitutionality of warrantless domestic surveillance by the government

7. the unConstitutionality of no meaningful control over recusal and disqualification of federal judicial officers

8. the unConstitutionality of allowing Justices on

32.

the Fifth Circuit Court of appeals to select which

panels decide cases involving wealthy litigants

9.  a declaration that Conoco-Phillips; Chevron-

Phillips; Exxon-Mobil, have violated their charters and

have forfeited their right to do business in US

10.  the unConstitutionality of the Electoral College

11.  the unConstittionality of allowing any

government official to accept property from any person or

entity, i.e., the unConstitutionality of all lobbyists'

gifts and contributions to government officials

12.  a declaration that the Senate cannot consider

government attorneys for federal judicial appointments because

of ethical considerations not waivable by the arrattorneys

13.  a declaration that the Senate has no jurisdiction

to consider appointments to the federal judiciary of

former government attorneys who worked for the executive

because of ethical considerations

14.  a declaration of the rights of the parties regarding

the breach of the United Nations Charter by George W. Bush,

Dick Cheney, Paul Wolfowitz, and Donald Rumsfield

15.  a declaration that the State Bar of Texas Rules

of Disciplinary Procedure are unConstitutional as applied

to the facts involved in disciplinary action against Betty

Ann Newby  and reinstatement as an attorney in good standing

16.  a declaration that Betty Ann Newby is the owner

of certain properties located in Borger and Amarillo,

Texas

33.

17.  a declaration that President George Bush's
interpretationsof of Executive Orders __12667__
and __13233__ are unConstitutional
as violations of the Constitutional Separation of Powers

18.  a declaration of the rights of the parties in
judicial candidate confirmation procedures seeking
production of presidential papers       requiring the
executive office to provide   access to the Presidential
papers of    former Presidents Ronald Reagan and George
H. Bush  in the John Roberts and Samuel  Alito hearings

19. a declaration that the Administration of the Estate of George Ralph Newby, Jr., Deceased is void and vacated

20. a declaration that all orders and judgments entered against plaintiff and her clients resulting from fraud, obstruction of justice, and racketeering practices by a number of defendants in this suit are void and vacated

Plaintiff prays for damages against the responsible defendants, as allowed by law, within the jurisdiction of this Court . She prays for punitive damages as allowed by law. She prays for pre-judgment interest and interest at the highest rate for all interest, including while the case is on appeal. She prays for attorney fees, if applicable.

Betty Ann Newby prays for a Constructive Trust to be established pursuant to state law and applicable to this court through the application of the Erie v. Tompkins rule for the benefit of          citizens of all properties owned by Conoco-Phillips; Chevron-Phillips; and Exxon-Mobil.

Plaintiff prays for restoration of her properties wrongfully demolished, alternative to damages. She prays for damages to her person and reputation as allowed by law. She prays for any additional relief to which she is entitled in law or equity. Declaration of Betty Ann Newby is attached in lieu of verification of the facts. She prays for a judgment that includes the above , including, damages  from defendants responsible for the costsz of the Iraq war.

35.

Respectfully submitted,

Respectfully submitted,

_____

Betty Ann Newby , <u>pro se</u>

425 2nd. St. NW
Washington, D.C.

## Declaration of Betty Ann Newby

" My name is Betty Ann Newby.  I am the plaintiff.
I have read the foregoing Complaint and I am competent to
make this Declaration.  The facts are true and correct and
are based upon personal knowledge unless otherwise stated.
The information regarding warrantless government
surveillance was provided by government employees as well
as by third persons.

I make this Declaration under the pains and penalties of
perjury on January 30, 2006,in Washington, D.C. "

_____

Betty Ann Newby

36.