UNITED STATES District Court
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

Betty Ann Newby,
    plaintiff,

vs.                                    No. 06-00160

President George Bush, Justice
Samuel Alito , et al,
    Defendants

Plaintiff's Motion for
Immediate Equitable Relief - TRO · PRELIMINARY INJUNCTION

To the Honorable Judge of the Court:

Betty Ann Newby moves the Court for immediate equitable reliefinand a temporary restraining order or preliminary injunction to enjoin Senate President Ted Stevens and Senate Select Committee on Intelligence Pat Robertson from proceeding with confirmation proceedings for General Michael Hayden as President Bush's nominee for the Director of the Central Intelligence Agency pending a hearing on plaintiff's motion for immediate equitable relief based upon valid Constitutional challenges to the Senate's confirmation procedures that deny plaintiff her civil rights and to the government's warrantless surveillance of Americans for purely political purposes inrelated to terrorism. She shows the court as follows in support of her motion.

1.

RECEIVED
MAY 2 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## Facts Supporting Immediate Equitable Relief

President George W. Bush recently appointed former Director of the National Security Agency Michael Hayden for the position of Director of the Central Intelligence Agency to replace Director Porter Goss, who has resigned as Director of the CIA. Upon information and belief, General Michael Hayden as Director of the National Security Agency, approved warrantless surveillance of Americans. The National Security Agency, (NSA), developed a procedure for utilizing information obtained from Echelon and other mass interceptance networks without court orders concerning personal matters unrelated to terrorism involving American citizens even before the 9/11 attack by the Saudis.

President George H. Bush classified Betty Ann Newby in 1990, and government agents continue to harass her, interrupt her privacy and solitude, intercept her mail and communications, convert her properties, interfere in court proceedings, and defame her as they have done continuously since 1990. She is a District of Columbia resident without Senators to represent her in the Senate confirmation proceedings involving the appointment of General Michael Hayden for the position of Director of the Central Intelligence Agency. The Senate Select Committee on Intelligence has no procedures that allow an unrepresented American citizen such as Betty Ann Newby to participate in the political processes involving the actions

2.

of the United States Senate, including confirmation proceedings involving Presidential appointments such as for the Director of the Central Intelligence Agency.

Plaintiff Newby is directly affected by the appointment of General Hayden for the position of Director of the Central Intelligence Agency (CIA) as an American citizen and as a resident of the District of Columbia. She moved to the District of Columbia from Texas, where she enjoyed full participation in the American political process, including representative government and the right to seek redress from all three branches of America's constitutional democracy. Betty Ann Newby attempted to participate in the confirmation proceedings conducted by the Select Committee on Intelligence by petitioning its chairman to allow her to participate as an unrepresented District resident, by asking an employee of the Committee to allow her to give testimony and to ask General Hayden questions during his hearing, and by presenting her written request to Chairman Pat Roberts and to several members of the Select Committee. Chairman Roberts did not answer her request; the Committee's employee denied her request, and no Senator-member of the Committee represented her interests during the hearing proceedings. She was ready, willing, and able both to ask General Hayden questions pertinent to his appointment and to testify in opposition to his appointment based upon facts related to the government's illegal surveillance of her for purely political purposes

for over sixteen years, causing her great mental grief and anguish, loss of properties, and loss of her privacy and solitude. The Senate Select Committee on Intelligence has denied plaintiff her civil rights by refusing to provide procedures to include political participation by unrepresented residents of the District of Columbia. The federal government has denied her Constitutionally protected rights to petition all three branches of the federal government for redress of grievances;
to travel and relocate interstate without discrimination based upon her residency; to challenge the President's appointments; to inform other Americans of illegal conduct by the President, Congress, and the Courts; to Due Process and Equal Protection of the laws; to a right of privacy; to freedom from searches and seizures; to the right to just compensation for wrongful government taking of her properties, to enjoy a republican form of government; to free speech and association. to participate in the political process,' to vote, and her to Ninth Amendment rights.

As shown in the Original and Supplemental Complaints in this case, President George H. Bush originally classified plaintiff in 1990 as a political favor to Big Oil interests. As a Texas lawyer she was involved in aggressive class action litigation against Phillips Petroleum Company and the Johnson-Whittenburg heirs for attempting to force a mass relocation

of residential Phillips, Texas to cover up their certain CERCLA, tort, Constitutional, and equitable estoppel liabilities due to decades of hazardous chemical exposures. Corporate Phillips was represented by corporate and retained counsel who bribed the presiding judge and certain judges in the Fifth Circuit Court of Appeals and who destroyed truckloads of protected environmental records relevant to the plaintiff-class' claims for damages, CERCLA response costs, and declaratory and equitable relief. The CERCLA costs (42 U.S.C. ¶¶9601 et seq.) now exceed a billion dollars. Although agents for Phillips, the Whittenburgs and Johnsons, and lawyers for the Dallas defense firm of Locke, Purnell, Rain Harrell, P.C. (Harriet Miers' former firm) attempted to bribe plaintiff, she refused to participate in bribery and obstruction of justice. The defendants' agents threatened to have the City of Borger, Texas agents bulldoze plaintiff's properties and to have Justice Nathan Hecht and the State Bar of Texas disbar plaintiff in 1996. Five years later they made good on their threats, aided by wrongfully obtained information by agents for the President through the Home Guard Security network, whose personnel include the military, the FBI, NSA, Texas retired and active Texas National guard personnel, and local civilians. Agents for Locke Purnell control the Texas Bar.

The protocol for Home Guard Security operations includes such illegal activities as burglarizing the surveille's home, office, and vehicles to install intelligence devices. The local and state law enforcement personnel participate as well.

In plaintiff's case, the military provided the equipment and necessary surveillance training through, <u>inter alia</u>, Special Operations. Laser equipment is installed every three inches; all communications are intercepted and obstructed, including the phones, faxes, copiers, e-mails, office equipment and public offices such as copy shops. Postal Services employees read the mails and various phone companies cooperate. All persons who call or visit the surveille <u>vice versa</u> are likewise surveilled. By 2004, plaintiff was classified on a level named by the military as "K-Dog-3", a surveillance classification used for terrorists only one security level lower than Osama Bin Ladin. This outrageous use of taxpayers' monies annually costs taxpayers billions of dollars that could be used more efficiently and wisely on real terroristic threats. Congress exercises no meaningful oversight, allowing a <u>de facto</u> dictatorship to prevail in America with the military actually in control through the Executive Branch, which operates behind a veil of secrecy.

A government agent with personal knowledge told plaintiff that former President George H. Bush approved a clandestine surveillance operation throughout the Middle East after the Persian Gulf War between 1991-1994 costing the American taxpayers over eight million dollars. The operation was effected by CIA sub-contractors' posing as small appliance repairmen and installing hidden surveillance devices using procedures like the ones used on plaintiff. The CIA and the President learned all about Hussein's lack of weapons

of mass destruction, as well as the exact locations of oil deposits and business arrangements with various companies to produce Middle Eastern Oil.

Vice-President Dick Cheney was Secretary of Defense during the Bush Administration. By 1997, he and now Secreatry of Defense Donald Rumsfield, who worked together during the Ford Administration, planned strategies for future world leadership. As Vice-President Dick Cheney met with representatives of the energy sector to plan strategies in the Middle east, <u>inter alia.</u> The free internet encyclopedia <u>Wikipedia.org</u> reports that Vice-President Dick Cheney has made between 30-100 million dollars on the war in Iraq based upon his Halliburton retirement agreement. His son-in-law, Philip Perry, Esq., a former martin Lockheed lobbyist, is now general counsel for Homeland Security Department. Big Oil contributed in excess of 110 million dollars to President George W. Bush's re-election campaign.

Phillips Petroleum Company has now merged with Chevron and Conoco. ConocoPhillips claims to be the world's largest refiner. Phillips originally provided gasoline to the government during World War II and loaned one of its chief chemists who developed the polymer process for Phillips Petroleum Co. to the government for the Manhattan project. Phillips' corporate officers enjoy long-time personal relationships with American Presidents, and the company routinely hired FBI agents after they left government employment. The Chairman of Phillips was indicted for paying President Richard Nixon's

campaign an illegal contribution of $100,000 in cash.  Phillips obtained the ARDS patent specifically to profit from the byproduct market of sulphur rich Arab oil by mixing hydrogen on site with the Arab sulphur to make $H_2S$ to use as feedstock for its lucrative plastics, pharmauceticals, pesticides, solvents, and paints.  It requires 12,000,000 barrels of crude to to make the 14 billion plastic bags Americans consume in one year.  The profits are enormous.

James Oberwetter, Ambassador to Saudia Arabia's, father was an executive for Phillips Petroleum Company. The American military presence assures the success of the pipe line around the Caspian Sea in transmitting products to Europe and Asia----all at the American taxpayer-consumer's cost.

The Senate Select Committee on Intelligence and the American public need to know these facts in evaluating both the present Administration and the appointment of General Michael Hayden as Director of the CIA.  Plaintiff's right to vote for the President, of course, includes the right to criticize his or her appointments.  However, the current lack of voter-constituent status of plaintiff as an unrepresented D.C. resident does not allow her to participate in the American political process because of her residency. Her civil rights have been reduced by 77% because she is now a resident of the District of Columbia. The courts have historically protected the civil rights of Americans from government abuse , and the practice of judicial review is a basic part of the American political process.

Presidential lawyers attempted to change the Presidential Records Act in 1989 by purporting to implement procedures for the Archivist, an Executive Branch employee, in making Presidential papers available to the public. Because only Congress may amend the law, Executive Order No 12,667 was illegal in attempting to limit the effect of the statute making the public the owner of Presidential papers. The President and the Vice-President have only a qualified immunity and interest in the privacy of their official papers.

In              the President revoked Executive Order No    12667 and replaced it with  Executive Order NO. 13233. The latter wrongfully extended putative Presidential privilege to make it almost impossible for the public to obtain Presidential and Vice Presidential papers, violating separation of powers in direct contravention of the legislative purpose of the Presidential Records Act enacted in response to the Watergate scandal and President Nixon's refusal to turn over the tape recordings to the Special Prosecutor Leon Jaworski. Because the intelligence community has mushroomed since its inception and now over 16 different agencies are involved in intelligence gathering for the federal government, and Congress funds in excess of 27 billion dollars a year for intelligence without meaningful and adequate oversight; the American people, including plaintiff, must be diligent in protecting their civil liberties from wrongful and excessive intrusion by the federal government, Plaintiff contends that Order 12,233 is void.

Although the Patriot Act granted the FBI new powers to conduct secret searches and surveillance in the U.S., most of its powers are overseen by a secret court that meets at the Justice Department and must approve applications for wiretaps, searches, and other operations.

The NSA operations is outside the court's purview, and the justice Department may have sought to limit how much that court was made aware of NSA's activities. Plaintiff and other Amercans have reason to mount concerns about their civil liberties and the domestic intelligence operations of the U.S.military. The secret order of the President amounts to his authorizing criminal activity. Plaintiff and other Americans are entitled to know General Hayden's philosophy on domestic surveillance by the military. The public hearing by the Select Committee on Intelligence raised more questions than provided assurances and answers. The suspicious aura surrounding General Hayden's philosophy and procedures at NSA was exacerbated by his prevailing in conducting two separate confirmation hearings: one for the Committee and one for the public. American government is required to be more transparent than to allow the military with its huge budget of public funds to operate in secret without meaningful checks and balances. Plaintiff is a qualified person to challenge General Hayden's confirmation both as a D.C. resident with no representation and as an innocent victim of illegal domestic surveillance by the military, the Texas National Guard,

state and local law enforcement officials, employees of
Big Oil interests, and local lay persons.
She has suffered mental grief and anguish as well as financial
losses from these illegal surveillance activities for    being
a political foe of the Reagan and Bush administrations.

### Need for Immediate Relief

Plaintiff Betty Ann Newby has meritorious claims against
the defendants and is entitled to seek redress for being
denied participation in the political process of Presidential
confirmations   and Congressional activities based upon her
residing in the District of Columbia where over 72% of the
residents  are persons of color and only 8%
of the registered votersare Republicans  Plaintiff Newby is likely

//

to prevail at trial on the merits of her case. Justice approves this Court's granting her immediate equitable relief, pending a hearing and answer by the defendants named in this motion. Plaintiff comes into court with clean hands and deserves justice and equitable relief from this court. She has no adequate remedy at law. General Michael Hayden is likely to be confirmed by the full Senate before this Court can conduct a hearing on this motion and the named defendants can be heard and answer. Plaintiff will suffer irreparable harm if General Hayden is confirmed as Director of the CIA because he will likely advocate and implement additional or at least similar surveillance activities and procedures against both unsuspecting Americans and other countries. The effect of clandestine, illegal surveillance and burgling of foreign officials' homes and offices and vehicles and converting their properties to the use fo the American government may lead the U.S. to take preemptive strikes against them without full disclosure to the Congress and the American people. The effect on unsuspecting Americans unrelated to terrorism is a complete loss of civil liberties to the American people and the enthroning of a complete dictatorship in the United States of America, which under the Constitution is a Constitutional democracy. The threat of confirmation without full disclosure of the facts is real and imminent to plaintiff's civil liberties and properties and liberty.

12.

Plaintiff is willing to post a bond to secure a temporary restraining order and a preliminary injunction.

In the event that the Senate confirms the appointment of General Hayden before the court can resolve this motion for immediate equitable relief, plaintiff prays that the court will vacate any such confirmation on Constitutional grounds.

Newby's Declaration is attached and incorporated.

### Prayer

Betty Ann Newby prays that the court enters a temporary restraining order or preliminary injunction enjoining the confirmation proceedings for General Michael Hayden's appointment as Director of the CIA pending a full hearing by this Court on the Constitutional grounds listed in this motion. She prays for a preservation of the <u>status quo</u> before confirmation. In the event confirmation has occurred before this motion can be decided or a preliminary injunction granted, plaintiff prays that the court vacates or nullifies any such confirmation based upon Constitutional infirmities. She prays for any additional relief to which she is justly entitled.

Respectfully submitted,
Betty Ann Newby
425 2nd St. NW 20001

### Declaration

My name is Betty Ann Newby and I am the plaintiff. I have read the above motion and the facts are true and are based upon personal knowledge unless otherwise stated. Information regarding Dick Cheney, Presidents George Bush,

corporate contributions to George W. Bush's campaign, the CIA operation in the Middle East from 1991-1994 and the lack of weapons of mass destruction are based upon information and belief as is the practice of Phillips' bribing government officials and its practice of hirinbg former FBI agents. The facts surrounding my surveillance are based upon facts revealed to me by a government agent.

I make this Declaration under the pains and penalties of perjury on May 25, 2006, in Washington, D.C.

I am competent to make this Declaration.

_Betty C. Null_

~~Certificate of Service~~ Rule 65.1 Certificate

I mailed a true copy of this to the President and delivered to Ted Stevens and to Pat Robertson on May 26, 2006. I delivered a copy to Chairman Roberts to give to General Hayden because I do not know his address since he no longer works at NSA.

_Betty C. Null_

Conference Certificate

I have not attempted to discuss this motion with the President, two senators, and General Hayden before filing.

_Betty C. Null_

Attached is a copy of a demand letter I mailed to the NSA, Postal Services, and other Executive Branch officials on March 2, 2006. It is incorporated into this motion.

Also attached and incorporated is a copy of the letter I served on Senator Roberts, Jay Rockefeller, and other members of the Select Committee on Intelligence.

_Betty C. Null_

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CO,UCOLUMBIA

Betty Ann Newby,
    plaintiff,
vs.                                    NO.    06-00160

President George W. Bush, <u>et al</u>,
    defendants.

Brief Supporting
Plaintiff's Motion for Immediate
<u>Equitable Relief</u> TRO - Preliminary Injunction

To the Honorable Judge of the Court:

    Plaintiff files her Brief in support of immediate equitable relief to enjoin the United States Senate from proceeding with the confirmation of General Michael Hayden as Director of the Central Intelligence Agency on Constitutional grounds.

<u>Case of First Impression</u>

    Plaintiff has found no specific case regarding whether the Bill of Rights applies to Senate Confirmation hearings. However, the Court has determined that the Bill of rights applies to Congressional investigative hearings, and the investigative nature of confirmation hearings should make the Bill of Rights equally applicable <u>See, Watkins v. U.S.</u>

Right to Participate in Confirmation
Hearings Is a Basic Part of Participation
<u>in the Political Process</u>

    Plaintiff contends that her civil right to participate in confirmation hearings, like her right to travel interstate and her right to vote, is a fundamental right as which cannot be abridged even by the United States Senate. The failure of

1.

the Senate Select Committee on Intelligence to implement procedural rules to accommodate unrepresented residents of the District of Columbia in confirmation hearings coupled with Congressional and Presidential refusal to extend the elective franchise to elect representatives to several hundred thousand residents of the nation's capitol denies plaintiff and over 270,000 other District residents a republican form of government and violate Amendments 1,5,9,14,19, and 23 and Article IV's guarantee of a republican form of government to the states. See, the Slaughterhouse cases; Is This America? The District of Columbia and the Right to Vote, Jamin Raskin 34 HARV.C.R.L.Rev. 39 1999; U.S. v. Nixon, Marbury v. Madison, 1 Cranch (5 U.S.) at 170 )(per J. Marshall C.J.) ; Reynolds v. Sims ;

### Judicial Review Is Available to Challenge Lack of Voter Status and Illegal Surveillance

This court has jurisdiction under 5 U.S.C 702 et seq. for equitable and edeclaratory relief . See, Abbott Laboratories v. Gardner 67, 387 U.S. 136, 152; Chamber of Commerce of U.S. v. Reich, 74 F.23d 1322. ; U.S. v. Nixon

Further, plaintiff may pursue her remedies in court for civil right violations against government officials. See, Davis v. Passman, 442 U.S. 228(1979); Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388; Powell v. MacCormack.

Rule 65, FRCP allows the court to grant injunctive relief under facts like the facts presented in the motion for

for immediate equitable relief.

The Confirmations of John Roberts, Jr., Samuel Alito, are void <u>ab initio</u> because the procedures used by the Senate are Constitutionally flawed. LIkewise, if the Senate confirms General Hayden in contravention of plaintiff's futile efforts to participate in the political process as an unrepresented D.C. voter, such confirmation of the new CIA Director will, likewise be void <u>ab initio</u>.

### Conclusion

This court has jurisdiction and venue to decide this case. It has equitable powers pursuant to Rule 65, FRCP to enjoin the Senate confirmation hearing to ensure that plaintiff's civil rights are not violated. Justice supports equitable relief. Plaintiff has clean hands and has a valid claim. She is likely to prevail on the merits. The threat of an unconstitutional confirmation is real and imminent unless the court grants the motion for immediate equitable relief. Any harm done to the defendants is mild in comparison to the harm done to the plaintiff if General Hayden is confirmed without allowing plaintiff an opportunity to challenge him. Plaintiff is willing to post a bond to secure the relief. For all of these reasons and in the interest of justice, plaintiff contends that the court should grant her motion.

Respectfully submitted,

Betty Ann Newby, <u>pro se</u>
425 21 St. NW D.C. 20001

3,